# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1208

William A. Forcier, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued August 16, 2005                   Decided   January 25, 2006 )

*David E. Boelzner,* of Richmond, Virginia, for the appellant.

*Michele R. Katina*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and DAVIS, *Judges*.

HAGEL, *Judge*: Before the Court is William A. Forcier's appeal from a June 13, 2003, Board of Veterans' Appeals (Board) decision in which the Board denied his claim for service connection for post-traumatic stress disorder. The case has been fully briefed and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the June 2003 Board decision. Mr. Forcier argues that the Board erred by failing to require VA to continue assisting him by pursuing verification of his alleged in-service stressor of sexual assault. He also asserts that the Board and the Secretary failed to ensure compliance with the terms of an August 2002 joint motion for remand and violated his right to such compliance under *Stegall v. West,* 11 Vet. App. 268, 271 (1998). We hold that VA complied with its duty to assist Mr. Forcier in verifying his in-service stressor until the evidence obtained indicated that there was no reasonable possibility that further assistance would substantiate the claim. We further conclude that, although we have jurisdiction to enforce the unincorporated joint motion for remand, because the terms of the joint motion were excessively vague and the Board complied with the only explicit instructions in the motion, neither

the Secretary nor the Board violated any potential duties to ensure compliance with that motion. We therefore affirm the June 13, 2003, Board decision.

## I. FACTS AND PROCEEDINGS

Mr. Forcier served honorably in the U.S. Army from March 11, 1957, to August 22, 1957. He also served in the Washington Army National Guard from March to August 1956. His service medical records did not contain any reference to complaints or findings regarding a psychiatric disorder, and his separation medical examination noted that he had no serious illness or injury while in service. In May 1988, the Social Security Administration determined that Mr. Forcier was disabled and had a severe mental disorder. His private treatment records indicate that he was diagnosed with and treated for depression in November 1987 by Timothy Burns, M.D.

In September 1993, Mr. Forcier applied for VA compensation for heart problems, rheumatic fever, and a kidney condition. In the report from a November 1993 VA medical examination, a VA medical examiner noted in a section entitled "diagnosis" that he had a "history of depression under therapy." Record (R.) at 142. In November 1993, Patricia M. Johnston, M.S., a therapist at the Spokane Sexual Assault Center, wrote a letter to VA stating that she had been treating Mr. Forcier since March 1989 for recurrent bouts of major depression. In a March 1994 decision, a VA regional office denied Mr. Forcier's claim for entitlement to service connection for depression. He filed a Notice of Disagreement in May 1994. In December 1994, Ms. Johnston wrote another letter to VA and indicated that, based on an account provided by Mr. Forcier, in approximately January 1957 he was sexually assaulted by his platoon sergeant while he was taking a shower. She conveyed that as a result of the sexual assault he began to drink more heavily and have nightmares and that "[he] was [absent without leave] the day after the incident occurred, but he did not report the [incident to military officials] out of fear of reprisal, shame, and embarrassment." R. at 203. She reported that after his release from military service his symptoms of anxiety and depression worsened, and he lost six jobs as a result of his drinking. She then stated that "[h]is [symptomatology] was consistent with that of post-traumatic stress disorder." *Id.* She also noted that she had administered a personality test to Mr. Forcier and that although the test results indicated he was severely depressed and had a

2

long history of insecurity, he had difficulty understanding the contents of the examination and his random responses invalidated the test results.

At a personal hearing conducted at the regional office in December 1994, Mr. Forcier testified that he did not report the sexual assault while he was in service because he was embarrassed and that soon after the incident he was transferred to a different platoon. He also stated that although he had informed Ms. Johnston initially that the assault occurred in January 1957, the incident had more likely occurred in June 1957, and he may have made such a mistake because he did not feel comfortable discussing the assault with her and did not know at the time that she would report the details of his account. In May 1995, a VA hearing officer issued a rating decision denying Mr. Forcier's claim for entitlement to service connection for an acquired psychiatric disorder including post-traumatic stress disorder.

In June 1995, Mr. Forcier was examined by Dr. Frank E. Bjorseth. Dr. Bjorseth noted that he had seen a copy of Ms. Johnston's evaluation, which reported that Mr. Forcier was sexually assaulted. Dr. Bjorseth determined that he had no reason to doubt Ms. Johnston's apparent diagnosis of post-traumatic stress disorder in light of Mr. Forcier's description of his absence without leave, his abusive use of alcohol, and the increasing evidence of his major depression.

At a July 1996 personal hearing conducted at the regional office, Mr. Forcier provided sworn testimony that he did not remember the name of the platoon sergeant who allegedly assaulted him. He also stated that he requested to be transferred to a different platoon after the incident. In April 1997, the Board remanded his claim and ordered the regional office to afford him a special psychiatric examination by a board of two VA psychiatrists.

In June 1997, Ms. Johnston wrote a letter to the Division of Disability Determination Service regarding Mr. Forcier's treatment since January 1996. She noted that in February 1996 his main complaints were symptoms of anxiety and depression due to financial stress and concerns regarding his children and stepchildren. She also noted that these symptoms had worsened since his heart surgery in June 1997.

Pursuant to the Board's 1997 remand order, Mr. Forcier was examined in July 1997 by Dr. Helen P. Pamintuan and Dr. Adalina Carter at the Spokane VA Medical Center. They administered a personality test to Mr. Forcier but cautioned in their report that the validity configuration suggested

3

that great care should be taken in evaluating his results because he may be unable to correctly complete the test and he may be exaggerating or malingering in an attempt to obtain some goal. They stated in their diagnosis that he presented some symptoms of post-traumatic stress disorder but that he did not fulfill the full criteria for that condition. They also diagnosed him with personality disorder including dependent, avoidant, and immature features, and psychosocial and environmental problems as "slight secondary to problems with social environment." R. at 601.

In August 1998, Ms. Johnston wrote a letter to VA in which she stated that in her opinion "Mr. Forcier [had] post-traumatic stress disorder complicated by a number of physical ailments." R. at 612. In a February 1999 personal hearing held at the regional office, Mr. Forcier testified under oath and identified the surname of the platoon sergeant who allegedly assaulted him. He testified that, while the sergeant was assaulting him, someone opened the door to the shower room and that at that point he ran away and was absent without leave overnight. He stated that when he returned the sergeant threatened to kill him if he reported the incident. He further stated that soon after the incident, another sergeant, who had observed that a conflict had occurred between Mr. Forcier and the alleged assailant, transferred Mr. Forcier to a different squad than the alleged assailant's squad.

In September 1999, the regional office returned his case to the Board for disposition. In October 1999, the Board again remanded his claim to the regional office with a list of instructions that included the following tasks: (1) Obtain Mr. Forcier's service personnel records from the National Personnel Records Center and specifically request information concerning whether he was absent without leave and was transferred from one company to another during his training in 1957; (2) send him a claim development letter recommended for use in personal assault cases, inform him of potential sources of verification of his in-service stressor, and "pursue all available avenues to assist him in locating anyone identified for a statement regarding the claimed incident" including the two sergeants he has identified by name; (3) schedule Mr. Forcier for a psychiatric examination to determine the correct diagnosis of any psychiatric disorder after reviewing his medical history; and (4) review the claims folder with specific attention directed to the psychiatric examination report. R. at 684-85.

In December 1999, the regional office sent Mr. Forcier a letter in which it provided him with a list of potential sources of verification of his sexual assault stressor. The letter recommended the

4

following sources: (1) Medical records from private physicians who may have treated him immediately after the incident; (2) civilian police reports; (3) reports from crisis intervention centers such as rape crisis centers; (4) testimonials from confidants such as family members, fellow service members, or clergy; and (5) copies of personal diaries or journals. The regional office also stated that, in order to comply with the Board instruction to locate the two sergeants identified by Mr. Forcier to obtain corroborating statements, Mr. Forcier needed to provide the full names of the sergeants, since Mr. Forcier had previously provided only their last names. The regional office also asked Mr. Forcier to complete an enclosed questionnaire concerning the incident. In May 2000, VA sent Mr. Forcier a letter informing him that it had not yet received a response from him with regard to the complete names of the sergeants whom he had identified as potential witnesses or any alternative sources that could help him verify the stressor.

In January 2001, the regional office scheduled Mr. Forcier for a VA examination by a psychiatrist and requested that the psychiatrist review Mr. Forcier's medical history, his claims folder, and the 1999 Board remand order. It also requested that he integrate the previous psychiatric findings with the diagnosis of current findings. The psychiatrist was asked to express an opinion as to whether Mr. Forcier meets the criteria for post-traumatic stress disorder contained in the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) [hereinafter DSM-IV].

On March 22, 2001, Mr. Forcier was examined by David Giffen, Ph.D., to assess whether he had post-traumatic stress disorder. Dr. Giffen indicated that on the basis of internal inconsistency of the information, history, and psychological testing, Mr. Forcier was not thought to be a highly reliable source for information. He reported that the test results suggested that Mr. Forcier was strongly motivated to present himself in the worst possible light during assessment. He diagnosed Mr. Forcier with dependent, avoidant, and passive-aggressive traits and with multiple medical problems. Dr. Giffen determined that "even accepting the alleged stressor as true in all respects and assuming it meets criterion A for [post-traumatic stress disorder], the veteran would still fail to meet diagnostic criteria in the areas of persistent avoidance of stimuli associated with the trauma and persistent symptoms of increased arousal."[1] R. at 1499. He suggested that "such symptoms that do

_____

[1] The DSM-IV diagnostic criteria for post-traumatic stress disorder that Dr. Giffen considered in his diagnosis provide, in pertinent part, as follows:

exist are more reasonably attributed to dysthymic disorder, and longstanding characterological patterns." *Id.* He arrived at this conclusion after "exhaustively" reviewing the claims file, interviewing Mr. Forcier for 75 minutes, and administering three diagnostic examinations. *Id.*

On March 26, 2001, VA issued a Supplemental Statement of the Case denying Mr. Forcier entitlement to service connection for post-traumatic stress disorder. On August 21, 2001, the Board also denied Mr. Forcier's claim for this benefit after finding that his history of sexual assault was not credible and that the evidence preponderated against his claim. Mr. Forcier appealed to this Court, and on August 27, 2002, the parties agreed to a joint motion for remand. The basis for the remand was stated as follows: (1) The Secretary did not comply with his duty to make reasonable efforts to assist Mr. Forcier in verifying his in-service stressor with the information that Mr. Forcier provided; and (2) the Board did not provide an adequate statement of reasons or bases because (a) after finding that Mr. Forcier was diagnosed with post-traumatic stress disorder it rejected this diagnosis partly because it did not have evidence of an in-service stressor, and (b) it did not discuss application of the provisions of the VA Adjudication Procedure Manual M21-1 [hereinafter M21-1] to the relevant evidence when it rejected Mr. Forcier's account of his in-service stressor. Counsel for Mr. Forcier agreed during oral argument that the joint motion for remand did not provide explicit instructions as to how VA should assist Mr. Forcier in obtaining verification of his alleged stressor and that the only specific instructions contained in the joint motion were that "[t]he [Board] should reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." R. at 1593. The Clerk of the Court did not incorporate the joint

Criterion A1: "The essential feature of [post-traumatic stress disorder] is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity."
Criterion A2: "The person's response to the event must involve intense fear, helplessness, or horror."
Criterion B: "The charcteristic sympoms resulting from the exposure to the extreme trauma include persistent reexperiencing of the traumatic event."
Criterion C: "[P]ersistent avoidance of stimuli associated with the trauma and numbing of general responsiveness."
Criterion D: "[P]ersistent symptoms of increased arousal" that may include "difficulty falling or staying asleep that may be due to recurrent nightmares during which the traumatic event is relived (Criterion D1), hypervigilance (Criterion D4), and exaggerated startle response (Criterion D5)."
Criterion E: "The full symptom picture must be present for more than 1 month."
Criterion F: "[T]he disturbance must cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." DSM-IV, section 309.81, at 424-25.

6

motion for remand by reference in the Court's August 30, 2002, remand order, and the Court's order stated only, in pertinent part, as follows: "[T]he motion is granted and that part of the [Board's] decision that denied entitlement to service connection for post-traumatic stress disorder is vacated. The matter is remanded pursuant to 38 U.S.C. § 7252(a)." R. at 1585.

In February 2003, Mr. Forcier submitted a psychiatry progress note dated November 26, 2001, and signed by Judy Dannhardt, a licensed practical nurse, which stated: "[Patient reports that he] [c]ontinues to have nightmares, intrusive thoughts, about the trauma, startled responses, anxiety episodes and anger problems . . . [and he] tends to avoid people." R. at 1608.

On June 13, 2003, the Board issued its decision on remand. In that decision, which is now on appeal to this Court, the Board noted the terms of the joint motion for remand but declined to attempt to verify Mr. Forcier's claimed stressor of sexual assault. The Board determined that the "extensive factual development" in this case indicated that there was no reasonable possibility that any further assistance would aid Mr. Forcier in substantiating his claim and that it was not necessary to further expend VA's resources. R. at 7. Citing *Soyini v. Derwinski,* 1 Vet.App. 540, 546 (1991), the Board noted that in the face of overwhelming evidence in support of the result in a particular case further inquiry and adherence to the duty to assist would unnecessarily impose burdens on VA with no benefits flowing to the veteran. The 2003 Board denied Mr. Forcier's claim for entitlement to service connection for post-traumatic stress disorder after concluding that the evidence he had submitted regarding the alleged stressor of sexual assault was not credible and that the medical evidence preponderated against a diagnosis of post-traumatic stress disorder.

## II. ARGUMENTS ON APPEAL

On appeal, Mr. Forcier now argues before this Court as follows: (1) The Board erred by failing to require the Secretary to comply with his duty to assist in verifying the alleged in-service stressor; (2) the Board and the Secretary failed to ensure compliance with the terms of the joint motion for remand and violated his right to such compliance under *Stegall,* 11 Vet. App. at 271; and (3) the Board failed to provide adequate reasons or bases for its decision. The Secretary asserts the following arguments in response: (1) Any failure on the part of VA to comply with the duty to assist was nonprejudicial; (2) pursuant to *Breeden v. Principi,* 17 Vet.App. 475, 479 (2004), the Court is

7

not obligated to enforce the terms of a joint motion for remand not incorporated by reference into the Court's order; and (3) the Board's reasons or bases for its decision were adequate.

## III. ANALYSIS

In this appeal, we address questions regarding VA's compliance with a joint motion for remand and the Secretary's duty to assist in the context of a claim for post-traumatic stress disorder based on an alleged incident of in-service sexual assault. Before beginning our analysis of the underlying issues, we will briefly examine the regulations pertaining to that claim.

In order to establish service connection for post-traumatic stress disorder, a claimant must present (1) a current, clear medical diagnosis of post-traumatic stress disorder, (2) credible supporting evidence that the claimed in-service stressor actually occurred, and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in-service stressor. 38 C.F.R. § 3.304(f) (2004). When the claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. 38 C.F.R. § 3.304(f)(3). Such evidence may include, but is not limited to, "records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy." *Id*.

We also note that § 3.304(f)(3) provides that "[e]xamples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: [A] request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes." We recognize, however, that even if a claimant presents such credible evidence that the alleged stressor of in-service personal assault occurred, he or she cannot obtain service connection for post-traumatic stress disorder when the medical evidence preponderates against a diagnosis of post-traumatic stress disorder. 38 C.F.R. § 3.304(f). With these principles in mind, we will consider each of the parties' arguments in turn, following the standard of review.

8

## A.  Standard of Review

We review questions of law de novo without any deference to the Board's conclusions. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000).  The  Board's assessment of the credibility and weight to be given to medical evidence is a finding of fact that we review under the "clearly erroneous" standard of review.  38 U.S.C. § 7261(a)(4)*; Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).  "[A] factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski,* 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  In addition, the Board may commit remandable error when it fails to provide an adequate statement of reasons or bases for a decision.  *See Gilbert,* 1 Vet.App. at 57.

## B.  Duty to Assist

The Secretary has a duty to assist pursuant to 38 U.S.C. § 5103A(a), under which he must make "reasonable efforts to assist a claimant in obtaining the evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary."  If, however, the evidence obtained indicates that there is no reasonable possibility that further assistance would substantiate the claim, "VA will discontinue providing assistance in obtaining evidence for a claim." *Id; see Wensch v. Principi,* 15 Vet.App. 362, 368 (2001) (holding that when there is extensive factual development in a case that indicates no reasonable possibility that any further assistance would aid the appellant in substantiating his claim, the Veterans Claims Assistance Act of 2000 does not apply); *see also Dela Cruz v. Principi,* 15 Vet.App. 143, 149 (2001).

In claims for post-traumatic stress disorder arising from in-service personal assault, "the Secretary has undertaken a special obligation to assist a claimant . . . in producing corroborating evidence of an in-service stressor." *See Patton v. West,* 12 Vet.App. 272, 280 (1999) (interpreting M21-1, Part III, P 5.14c(8) and (9)).  Because of the unique problems of documenting personal-assault claims, the regional office "is responsible for assisting the claimant in gathering, from sources in addition to in-service records, evidence corroborating an in-service stressor, by sending a special letter and questionnaire, by carefully evaluating that evidence including behavior changes, and by furnishing a clinical evaluation of behavior evidence."  *Id.* at 282 (citing M21-1, Part III, P 5.14c).

9

We also note that pursuant to § 3.304(f)(3), "VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor" and allowing the claimant the opportunity to provide this type of evidence or advise VA of potential sources of such evidence. If in the process of identifying these potential sources, a claimant provides the name or names of any persons who allegedly perpetrated the assault or the names of any potential witnesses, the Secretary's reasonable efforts to assist, as required under section 5103A(a), may also include attempting to assist the claimant in obtaining statements from these persons. *See Patton,* 12 Vet. App. at 280-81.

In the instant case, the Secretary complied with all of the requirements of providing assistance until "the evidence obtained indicate[d] that there [was] no reasonable possibility that further assistance would substantiate the claim." 38 C.F.R. § 3.159. In October 1999, when the Board remanded Mr. Forcier's claim, it required that the regional office send him a claim-development letter recommended for use in personal assault cases and inform him of potential sources of verification of his in-service stressor. The Board then specifically ordered that the regional office "pursue all available avenues to assist him in locating anyone identified for a statement regarding the claimed incident," including the two sergeants he had identified by name. R. at 686. The Board ordered the regional office to schedule a medical examination and required that the psychiatrist review the medical history before determining the correct diagnosis. It also required the regional office to obtain Mr. Forcier's service personnel records from the National Personnel Records Center to determine whether he was absent without leave and was transferred from one company to another during his training in 1957.

In December 1999, pursuant to these orders, the regional office sent Mr. Forcier a letter in which it provided a list of potential sources of verification of his sexaul assault stressor, as required under § 3.304(f)(3). It also asked him to (1) provide the full names of the sergeants he had identified so that they could be located to provide corroborating statements and (2) complete an enclosed questionnaire concerning the incident. The record indicates that Mr. Forcier never responded to these requests. In January 2001, the regional office then scheduled him for a medical examination, in accordance with the Board order.

The results of this examination, administered by Dr. Giffen, indicated that "even accepting the alleged stressor as true in all respects and assuming it [met the criteria for an in-service stressor required to obtain service-connection for post-traumatic stress disorder,] the veteran would still fail to meet diagnostic criteria" for a medical diagnosis of that condition. R. at 1505. In its March 2001 Supplemental Statement of the Case, which denied Mr. Forcier's claim, the regional office relied on this diagnosis as well as the July 1997 VA medical diagnoses in which Dr. Pamintuan and Dr. Carter concluded that Mr. Forcier did not meet the full criteria for post-traumatic stress disorder.

The Board determined in its June 2003 decision that "the evidence indicating that the veteran does not have post-traumatic stress disorder [was] more probative" than the statements from Ms. Johnston and the statements from Dr.Bjorseth, who noted that he had no reason to doubt Ms. Johnston's apparent diagnosis of post-traumatic stress disorder. R. at 21-22. The Board determined that Dr. Bjorseth was treating Mr. Forcier only for heart disease and that his opinion should be accorded less weight because it was outside the scope of his expertise. It also found Ms. Johnston's treatment records to be inconsistent because she had previously reported that Mr. Forcier's emotional problems were related to his financial troubles. The Board favored the March 2001 diagnosis by Dr. Giffen and the July 1997 diagnoses by Dr. Pamintuan and Dr. Carter over Ms. Johnston's December 1994 and August 1998 diagnoses. We cannot determine that the Board's assessment of the credibility and weight to be given to the medical evidence or its reliance on Dr. Giffen's diagnosis was clearly erroneous. 38 U.S.C. § 7261(a)(4); *Wood*, 1 Vet. App. at 193; *Gilbert*, 1 Vet.App. at 52. We therefore cannot conclude that the Board's finding that the medical evidence preponderated against a diagnosis of post-traumatic stress disorder was clearly erroneous.

The Board also determined that when, as in this case, "there is extensive factual development . . . and there is no reasonable possibility that any further assistance would aid the appellant in substantiating his claim," further expending VA's resources is unnecessary. R. at 7. Mr. Forcier argues specifically that VA failed to meet its duty to assist him in verifying the occurrence of his alleged in-service assault. Even if VA had failed to provide the required assistance in this regard, such a failure would not prejudice Mr. Forcier. The medical evidence supports a finding that Mr. Forcier did not have a diagnosis of post-traumatic stress disorder, even assuming that the incident of in-service assault described by Mr. Forcier had occured and that Criterion A of the DSM-IV criteria

11

was satisfied. Because Mr. Forcier failed to meet the necessary diagnostic criteria, even assuming the existence of a qualifying stressor, and because a medical diagnosis of post-traumatic stress disorder is necessary to establish service connection for that condition, we hold that the Board did not err in its determination that there was no reasonable possibility that further assistance in verifying the stressor would substantiate the claim. 38 C.F.R. §§ 3.159(d), 3.304(f); *see also Wensch, supra.*

### C. Joint Motion For Remand

We next address Mr. Forcier's assertion that the Secretary and the Board failed to ensure compliance with the terms of the August 2002 joint motion for remand and violated his right to such compliance under *Stegall.* 11 Vet.App. at 271. Mr. Forcier argues that the terms of the joint motion required the Secretary and the Board to attempt to verify his alleged in-service stressor. We note at the outset that although the Court granted the joint motion, it was not incorporated by reference in the Court's remand order. The joint motion is a nine-page document that contains a brief statement of facts, a portion entitled "Bases for Remand," and a conclusion. In the four-page "Bases for Remand" section, the motion states general principles of law and provides citations to statutes, regulations, and court cases. The motion also identifies deficiencies in the adjudication, i.e.,"VA failed to fulfill the duty to assist" and "[b]ecause the Board did not discuss the application of provisions of the M21-1 Manual to the relevant evidence, it failed to provide an adequate statement of its reasons or bases for rejecting the veteran's account of his in-service stressor and remand is warranted." R. 1589, 1593.

In *Stegall,* we held that "a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders." 11 Vet.App. at 271. We further held in that case "that a remand by this Court or the Board imposes upon the Secretary . . . a concomitant duty to ensure compliance with the terms of the remand," and that where "the remand orders of the Board or this Court are not complied with, the Board itself errs in failing to insure compliance." *Id.* We left open the question of whether a joint motion for remand not incorporated by reference also conferred any rights on the claimant or whether it likewise imposed any duties on the Secretary or the Board.

The Court addressed that question in *Breeden v. Principi.* However, a close reading of *Breeden* reveals that the Court discussed the alleged *Stegall* violation after it decided that it lacked jurisdiction to consider the appeal. 17 Vet.App. at 477-79. The *Breeden* Court recognized that

12

because the matter was still pending before the Board, there was no final decision for it to review and that it could not retain jurisdiction over a matter remanded to the Board. *Id.* at 478. Although the *Breeden* Court determined that "a joint motion premised upon an agreement by the parties 'effectively moots the case or controversy' before the Court," and that "the Clerk's order was administrative rather than adjudicatory," we note that all the cases cited in *Breeden* in support of those determinations also involve factual circumstances in which there was no final Board decision for the Court to review; and thus, they all compelled the same result as in *Breeden*–dismissal on jurisdictional grounds. *See id.; see also Hines v. Brown,* 7 Vet.App. 309, 311 (1994)*; Bond v. Derwinski,* 2 Vet.App. 376, 377 (1992). The decision in *Breeden* is therefore binding authority only with respect to cases where there is no final Board decision addressing the terms of the joint motion for remand not incorporated by reference.

Because it lacked jurisdiction, and because there was no prior final Board decision that had reviewed the joint motion, the *Breeden* Court did not have occasion to discuss thoroughly the implications of the holding and language in *Stegall* as they relate to joint motions not incorporated by reference. In the case at hand, we have the benefit of possessing jurisdiction to review a final Board decision that has already addressed the terms of the unincorporated joint motion. As we consider the unincorporated joint motion for remand in light of *Stegall*, we note that we held in *Stegall*, in pertinent part, as follows:

> The protracted circumstances of this case and others which have come all too frequently before this Court demonstrate the compelling need to hold, as we do, that a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders. We hold further that a remand by this Court or the Board imposes upon the Secretary of Veterans Affairs a concomitant duty to ensure compliance with the terms of the remand, either personally or as ["the] head of the Department." 38 U.S.C. § 303. It matters not that the agencies of original jurisdiction as well as those agencies of the VA responsible for evaluations, examinations, and medical opinions are not under the Board as part of a vertical chain of command which would subject them to the direct mandates of the Board. It is the Secretary who is responsible for the "proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department." 38 U.S.C. § 303. Moreover, the Secretary is by statute both the one to whom a veteran may appeal an initial denial as a matter of right (38 U.S.C. § 7104(a)), and a party, represented by the General Counsel, to every appeal before this Court (38 U.S.C. § 7263(a)). Finally, we hold also

that where, as here, the remand orders of the Board or this Court are not complied with, the Board itself errs in failing to insure compliance. While it is true that where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial (*see* 38 U.S.C. § 7261(b)) ("Court shall take due account of the rule of prejudicial error"), the Court cannot say, based on the record before it, that the appellant here has not been harmed.

11 Vet.App. at 271.

*Stegall* set forth three underlying principles with regard to remands: (1) The appellant has a right to compliance with the "remand orders," (2) the Secretary has a duty to ensure compliance with the "terms of the remand," and, (3) the Board errs in failing to ensure compliance with the "remand orders." *Id.* We note that the scope of the Secretary's duty to ensure compliance is defined by a broad phrase, i.e., "the terms of the remand." We further recognize that the "terms of the remand" may include the terms of a joint motion that is granted by the Court but not specifically delineated in the Court's remand order. The Secretary has a duty to ensure compliance with the terms of the remand either "personally or as ['the] head of the Department.'" *Id.* The duty to ensure compliance "personally" arises when the Secretary agrees to the specific terms of a motion for remand, and, based upon his position as "the head of the Department," he can be held accountable for this responsibility. As we set forth in *Stegall*, the Secretary is by statute responsible for the "proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department." 38 U.S.C. § 303; *Stegall,* 11 Vet.App. at 271. When the "head of the Department" reaches an agreement with the appellant and files a joint motion regarding the specific "terms of the remand," he has a duty under *Stegall* to ensure compliance with the terms of that motion for remand, regardless of whether or not it is incorporated by reference. *Stegall,* 11 Vet.App. at 271. We further hold that the Board has a duty under *Stegall* to ensure compliance with the terms of the agreement struck by the parties, which form the basis for the "remand order" even if they are not incorporated explicitly. *Id.* A claimant seeking to appeal before this Court the Secretary or the Board's failure to fulfill their *Stegall* duties must, however, first obtain a final Board decision rendered pursuant to the Court's grant of the joint motion for remand at issue. *See* 38 U.S.C. §§ 7266(a), 7252(a); *see also, Henderson v. West,* 11 Vet. App. 245, 246 (1998) (holding that without a final decision from the Board, the Court lacks jurisdiction over an appeal).

In the instant case, the 2003 Board decision, rendered following this Court's grant of the 2002 joint motion for remand, confers upon us jurisdiction to review whether the Secretary and the Board complied with their obligations under *Stegall*. After examining the 2002 joint motion for remand and comparing it with the 2003 Board decision, we hold that the Secretary and the Board have fulfilled their duties under *Stegall* because the terms of the joint motion do not place any obligations on the Secretary and the Board has complied with the only terms of the remand motion sufficiently clear to be enforceable. This conclusion was confirmed at oral argument by counsel for Mr. Forcier who agreed, upon reviewing the August 2002 joint motion for remand, that the only explicit instructions provided in the motion were the following: "The [Board] should reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." R. at 1593. We conclude that the June 2003 Board did exactly that. Although the Secretary's duty to assist in verifying the in-service stressor was discussed in the "Bases for Remand" section of the joint motion, that section provided only factual and legal analysis. It did not provide instructions directing the Secretary or the Board to take any specific action to assist Mr. Forcier by, for example, taking further steps to locate the sergeants identified by Mr. Forcier, obtaining corroborating statements from them, or designating that another form of assistance was required in light of the identified information. Because of the vagueness of the joint motion and the paucity of precise instructions, the Board was left without guidance on this matter.

Before the Court can conclude that the Board erred by failing to enforce a joint motion, it must determine that the joint motion, at a minimum, enumerated clear and specific instructions to the Board. In a joint motion, it is the responsibility of both represented parties to state clearly the purpose of the remand and to set forth detailed directions to describe the action the Board should take upon remand. *See* U.S. Vet. App. R. 27 (a)(2) & (3). The failure to do so here, except as noted above, resulted in terms too vague and ambiguous to give rise to any further Board duties. Consequently, we find no error in the manner in which the Board implemented the remand instructions.

D. Adequate Reasons or Bases

Mr. Forcier contends that the Board did not provide adequate reasons or bases for its June 13, 2003, decision because it wrongly discredited a November 2001 progress note he submitted. He also asserts that the Board provided inadequate reasons or bases and engaged in circular reasoning in its

15

determination that he had not presented credible evidence that the alleged in-service stressor occurred. With regard to the November 2001 progress note, the Board determined that Nurse Dannhardt did not review Mr. Forcier's medical history or any other evidence of record when recording her summary of the symptoms he reported to her and that her opinion should therefore be accorded less weight than those of Dr. Giffen, Dr. Pamintuan, and Dr. Carter. We hold that, in light of this analysis, the Board provided adequate reasons or bases for its decision to accord greater weight to the opinions of the VA medical examiners. We also determine that the Board's decision to favor the diagnoses of the VA examiners over Nurse Dannhardt's progress note was not clearly erroneous.

In considering the argument that the Board provided inadequate reasons or bases for its conclusion that Mr. Forcier had not provided credible evidence that the alleged in-service stressor occurred, we first note that the Board did provide written reasons or bases for its findings with regard to this issue in accordance with 38 U.S.C. § 7104. We acknowledge, however, that the Board engaged in questionable analysis and used an improper approach in rendering its decision on this issue. We note that when considering a pertinent M21-1 provision regarding the requirement that rating specialists consider evidence of behavior changes occurring at the time of the incident, the Board speculated that "[g]iven [Mr. Forcier's] preservice history of disciplinary problems, it is reasonable to assume that his [absence without leave] was due to his own misconduct and not a result of sexual assault." R. at 16, 18. We also note that when considering an M21-1 provision describing evidence of alcohol abuse as an example of behavior change, the Board determined that there was more evidence that such alcohol abuse was due to "his lack of aptitude for military service" rather than the alleged assault. R. at 16, 19. Such inferences are illogical, improper, and unsupported by the record. Such a cavalier approach to assessing the evidence tends to undermine all confidence in the Board.

We determine, however, that any error was nonprejudicial because the Board's determination that the medical evidence preponderated against a diagnosis of post-traumatic stress disorder was not clearly erroneous. The Board's findings are fully supported by medical evidence that indicated that even if the alleged in-service stressor described by Mr. Forcier had occurred, he would not meet the criteria for a medical diagnosis of post-traumatic stress disorder, which is necessary to establish service connection for that condition. A remand requiring the Board to address evidence of an alleged

16

in-service stressor would produce no benefit where, as here, the facts establish that the lack of a diagnosis was due to the absence of other diagnostic criteria. *See Stadin v. Brown,* 8 Vet. App. 280, 285-86 (1995) ("[E]ven though the Board did not discuss all the evidence relating to aggravation, a remand for that purpose would produce no benefit to the appellant.")

## IV.  CONCLUSION

On consideration of the foregoing, the June 13, 2003, Board decision is AFFIRMED.