# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-3519

FRANK A. HARPER, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 3, 2018                                    Decided December 6, 2018)

*April Donahower* and *Barbara J. Cook*, with whom *Megan M. Ellis*, was on the brief, all of Providence, Rhode Island, for the appellant.

*Joshua L. Wolinsky*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before DAVIS, *Chief Judge*, and MEREDITH and TOTH, *Judges*.

DAVIS, *Chief Judge*: U.S. Navy veteran Frank A. Harper appeals through counsel a July 20, 2016, Board of Veterans' Appeals decision. That decision, in relevant part, determined that the issue of entitlement to a total disability rating based on individual unemployability (TDIU) was not part of the underlying appeal for a higher initial disability rating for PTSD because Mr. Harper did not appeal the regional office's (RO's) decision that granted TDIU. This case was referred to panel to address whether an RO's grant of TDIU bifurcates an appeal, which in turn, would require the veteran to file a new Notice of Disagreement (NOD) to challenge the effective date assigned to the award of TDIU. Because the Board improperly determined that it did not have jurisdiction over TDIU prior to February 2016, the Court will reverse that portion of the decision. The Court will set aside and remand that portion of the Board's decision that denied an initial disability rating in excess of 50% for PTSD prior to December 17, 2015, for proceedings consistent with this decision.

# I. BACKGROUND

Mr. Harper served on active duty in the U.S. Navy from September 1970 to July 1972. Supplemental (Supp.) Record (R.) at 1341. In August 2008, Mr. Harper filed a claim for service connection for PTSD, Supp. R. at 1037, and in December 2008, the RO granted that claim and assigned a 30% disability rating, Supp. R. at 973-82. Mr. Harper timely disagreed with the assigned rating and ultimately appealed this decision. Supp. R. at 938-40 (June 2009 VA Form 9), 943-59 (Statement of the Case), and 964 (NOD). In July 2012, the Board increased the disability rating for service-connected PTSD to 50%. Supp. R. at 832-45.

In February 2013, the Court granted a joint motion for partial remand (JMPR) in which the parties agreed that the Board provided inadequate reasons or bases when it denied a disability rating in excess of 50% for service-connected PTSD. Supp. R. at 814-25. Specifically, the parties stated that the Board failed to discuss evidence of psychosis, including hallucinations, Supp. R. at 820, and only "provided minimal discussion with regard to any occupational impairment that [Mr. Harper] may experience as the result of his PTSD," Supp. R. at 822. Subsequently, in a July 2013 decision, the Board remanded the matter for additional development. Supp. R. at 608-17.

In February 2014, Mr. Harper requested TDIU, asserting that he is unable to secure or follow a substantially gainful occupation in part because of his PTSD. Supp. R. at 599-600. In an August 2014 decision, the RO denied TDIU. Supp. R. at 349-54.

In December 2015, the RO awarded Mr. Harper a 70% disability rating for service-connected PTSD, effective December 2015, noting that the award represented a partial grant of the benefits sought on appeal. Supp. R. at 75-87. In February 2016, Mr. Harper submitted a second request for TDIU, asserting that he is "qualified to apply for [TDIU] because [he has] one disability currently rated at 70%." Supp. R. at 70-72. In May 2016, the RO awarded TDIU and assigned an effective date of February 11, 2016. Supp. R. at 38-41.

In the decision on appeal, the Board denied a disability rating in excess of 50% before December 2015 for service-connected PTSD, Supp. R. at 8-12, and concluded that the issue of entitlement to TDIU was not part of the underlying appeal because Mr. Harper did not appeal the May 2016 RO decision that awarded TDIU effective February 11, 2016, Supp. R. at 14-15. The Board also denied entitlement to a disability rating in excess of 70% for PTSD beginning December 17, 2015. Supp. R. at 12-14. Mr. Harper does not challenge that portion of the Board

decision and therefore, this issue is deemed abandoned and that portion of the appeal will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

## II. PARTIES' ARGUMENTS REGARDING TDIU

Mr. Harper argues that the Board erred in concluding that the issue of entitlement to TDIU prior to February 2016 was not on appeal. Appellant's Brief (Br.) at 14. Specifically, Mr. Harper asserts that, pursuant to *Rice v. Shinseki*, 22 Vet.App. 447 (2009), the issue of entitlement to TDIU became "part and parcel" of his appeal for a higher initial disability rating for PTSD[1] in February 2014 when he explicitly raised the issue while his appeal was pending. *Id*. at 15. He asserts that, although "entitlement to TDIU for the period after February 2016 became moot as a result of the RO's decision, the issue of entitlement to TDIU prior to that date remained on appeal." *Id.*

In response, the Secretary argues that, because Mr. Harper did not appeal the May 2016 rating decision, that decision was not before the Board as part of the appeal for a higher initial disability rating for PTSD and the Court lacks jurisdiction to consider Mr. Harper's request for an earlier effective date for TDIU. Secretary's Br. at 17-18. The Secretary asserts that "*Rice*, no doubt raises the issue of TDIU, however, the Court's decision in *Rice* does not dictate that the Board *sua sponte* determine an earlier effective date for TDIU." *Id.* at 18.

Mr. Harper responds that the Secretary mischaracterizes the issue on appeal as a request for an earlier effective date, rather than an attempt to obtain an appropriate disability rating for the disability on appeal—PTSD. Appellant's Reply Br. at 10. He asserts that "[t]he Secretary's argument is based on his assumption that the RO's grant of TDIU from February 2016 forward served to bifurcate the issue of entitlement to TDIU from [his appeal for a higher initial disability] rating for PTSD"; however, once the issue of entitlement to TDIU became part of the appeal, only he could unilaterally eliminate that issue, and because he did not do so, the issue of entitlement before February 2016 remained in appellate status. *Id.* at 11.

---

[1] In their briefs, both parties refer to the issue on appeal as a "claim for an increased rating for PTSD." This characterization is incorrect, because the issue on appeal is the proper *initial* disability rating assigned for Mr. Harper's PTSD. *See* R. at 3. There is, however, no functional difference in this case between the two characterizations: the issue is whether Mr. Harper is entitled to a higher rating for his PTSD.

### III. ANALYSIS

**A. The Board had jurisdiction over the issue of entitlement to TDIU prior to February 2016, because the issue of TDIU became part and parcel of the underlying PTSD claim and the RO's grant of TDIU did not bifurcate the appeal.**

Whether the Board has jurisdiction over a matter, including whether an issue is properly bifurcated, is a question of law that this Court reviews de novo. *See Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011) (Court exercises de novo review over Board determinations that are critical to its jurisdiction); *see also Palmatier v. McDonald*, 626 F. App'x 991, 994 (Fed. Cir. 2015) ("[W]hether the [veteran's] claims were properly bifurcated . . . is a question of law."). As explained below, the Court holds that the Board erred in determining that it did not have jurisdiction over the issue of entitlement to TDIU before February 2016. Contrary to the Secretary's assertion, Mr. Harper did not need to appeal the May 2016 RO decision because the issue of entitlement to TDIU became part and parcel of the underlying PTSD claim and the RO's grant of TDIU served only as a partial grant of his request for TDIU. *See Rice*, 22 Vet.App. at 453-54; *Palmatier*, 626 F. App'x at 994-95.

#### 1. Rice v. Shinseki

Under *Rice*, the issue of entitlement to TDIU prior to February 2016 remained part and parcel of Mr. Harper's underlying PTSD claim and was properly before the Board for adjudication. In *Rice*, the Court held:

> [A] request for TDIU, whether expressly raised by a veteran or reasonably raised by the record, is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or . . . as part of a claim for increased compensation.

22 Vet.App. at 453-54. The Court further explained that, "[w]hen entitlement to TDIU is raised during the adjudicatory process of the underlying disability or during the administrative appeal of the initial rating assigned for that disability, *it is part of the claim for benefits for the underlying disability.*" *Id.* at 454 (emphasis added). Here, once Mr. Harper's PTSD claim was in appellate status by virtue of the December 2008 NOD, Supp. R. at 964, the issue of TDIU became part of the underlying PTSD claim when he filed an application for TDIU in February 2014, Supp. R. at 599-600.

#### 2. Palmatier v. McDonald

Because the issue of entitlement to TDIU was part and parcel of Mr. Harper's underlying PTSD claim, the Board had jurisdiction to consider that issue. To the extent that the Secretary

4

argues that the RO's grant of TDIU from February 2016 bifurcated the TDIU issue from Mr. Harper's PTSD claim, the Court disagrees because the RO's grant of TDIU served only as a partial grant.

Mr. Harper equates his case with *Palmatier*, a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit. Although this is a nonprecedential decision, the Court relies on it for its persuasive value because the facts and issue are like those of the case here. In *Palmatier*, the veteran filed a claim for entitlement to service connection for a low back disability in June 2002 and then, in March 2003, while his initial claim was pending, requested TDIU based on lower back pain. *Palmatier*, 626 F. App'x at 993. The next month, the RO denied his claim for a low back disability, and the veteran appealed that decision to the Board. *Id.* While his appeal was pending, the RO denied the veteran's request for TDIU, and the veteran did not appeal that decision. *Id.* The Board then, in September 2008, granted service connection for a low back disability, and in October 2008, the RO assigned a noncompensable disability rating, which the veteran contested. *Id.* In December 2009, the veteran filed a second request for TDIU, and in May 2010, the RO awarded a 40% disability rating for his low back disability, effective April 21, 2010, and a 10% disability rating for the period from June 2002 to April 2010. *Id.* The veteran appealed the May 2010 RO decision, disagreeing with the 40% rating from April 2010 and noting that, in February 1992, he had retired from his job due to back problems. *Id.* In April 2011, the RO awarded TDIU with an effective date of December 2009, the date of the veteran's second TDIU application. *Id.* The veteran did not appeal this decision. In June 2012, the Board concluded that the issue of TDIU was moot because the veteran had not appealed the RO's April 2011 decision. *Id.* at 994. This Court affirmed the Board's decision. *Id.* In reversing this Court, the Federal Circuit concluded that the issue of entitlement to TDIU was not bifurcated from the veteran's low back disability claim. *Id.* The Federal Circuit explained that the veteran's requests for TDIU in March 2003 and December 2009 were "part and parcel" of his initial June 2002 filing, and that the veteran did not bifurcate his appeal at any time. *Id.* at 994-95. Additionally, the Federal Circuit concluded that the RO's grant of TDIU in April 2011 "did not serve to bifurcate the appeal, but instead served simply to partially grant [the veteran's] request for TDIU." *Id.* at 995.

Similarly, here, the issue of entitlement to TDIU was not bifurcated from Mr. Harper's PTSD claim.[2] As explained above, once Mr. Harper's PTSD claim was in appellate status by virtue of the December 2008 NOD, the issue of TDIU became part and parcel of that claim when he filed an application for TDIU in February 2014. Thus, the issue of entitlement to TDIU was also in appellate status, and because Mr. Harper did not withdraw the issue of TDIU from his pending appeal, he did not bifurcate his appeal. *See* 38 C.F.R. § 20.204(a) (2014) ("Only an appellant, or an appellant's authorized representative, may withdraw an appeal."). And, as in *Palmatier*, here the RO's grant of TDIU in May 2016 "did not serve to bifurcate the appeal, but instead served simply to partially grant [Mr. Harper's] request for TDIU." *Palmatier*, 626 F. App'x at 995.

However, at oral argument, the Secretary maintained that whether TDIU remains part and parcel of the underlying appeal depends on whether the RO grants or denies TDIU. Oral Argument at 26:46-27:48, 28:56-29:35. He acknowledged that the RO cannot remove a matter from appellate status; therefore, he conceded that had the RO in May 2016 denied TDIU, the Board would have had jurisdiction over the issue. *Id.* at 26:46-27:24. Despite the Federal Circuit's reasoning in *Palmatier*, the Secretary argued that a different result is warranted when, as here, the RO grants *entitlement* to TDIU. *Id.* at 27:25-27:48. The Secretary asserted that, because Mr. Harper received the maximum rating, the effective date for the award is a downstream issue, which required Mr. Harper to file a separate NOD to initiate an appeal to the Board. *Id.* at 28:10-50. This argument is not persuasive in light of *Palmatier* and its reliance on precedent. *See Palmatier*, 626 F. App'x at 995.

As the Federal Circuit explained, it "made clear" in precedential decisions that "VA *must* consider whether a TDIU award is warranted whenever a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability." *Id.* (quoting *Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) (internal quotation marks omitted)); *see Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001). In this regard, the Court finds *Comer* instructive. In *Comer*, the veteran was awarded TDIU effective May 2004, during the pendency of his appeal for a higher disability rating and an effective date earlier than February 1999 for PTSD. 552 F.3d at 1365-66. Although the veteran did not file an NOD as to the

---

[2] The Secretary has conceded that, when an RO denies entitlement to TDIU, the issue of entitlement to TDIU remains part of the underlying claim and cannot be bifurcated by the RO. *See* Oral Argument at 25:15-30, 26:46-27:24, *Harper v. Wilkie*, U.S. Vet. App. No. 16-3519 (oral argument held May 3, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

6

effective date assigned for TDIU, the Federal Circuit held that the veteran's appeal "was sufficient, when coupled with the evidence showing his unemployability, to raise the issue of his entitlement to an earlier effective date for his TDIU award." *Id.* at 1367.

Here too, Mr. Harper was awarded TDIU during his pending appeal for a higher disability rating for PTSD, rated 50% disabling from December 2007. The Court concludes that, like the appeal at issue in *Comer*, Mr. Harper's appeal for a higher disability rating was sufficient, when coupled with evidence of unemployability, to raise the issue of entitlement to TDIU for the entire appeal period. In other words, the issue of entitlement to TDIU prior to February 2016 became part and parcel of the appeal for a higher initial disability rating for PTSD, and, pursuant to the reasoning in *Palmatier*, which the Court adopts, the RO's grant of TDIU did not bifurcate the appeal but rather served as a partial grant.

The Secretary also relied on *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997); *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997); and *Urban v. Principi*, 18 Vet.App. 143, 145-46 (2004) (per curiam order), to support his position that the effective date for the award of TDIU is a downstream element. *See* Apr. 26, 2018, Notice of Supplemental Authorities. But his reliance on these authorities is misplaced. Both *Barrera* and *Grantham* addressed the need to file an NOD with respect to elements of an application for benefits that were not previously adjudicated. For example, in *Grantham*, the Federal Circuit explained that an NOD placing the denial of service connection into appellate status does not place the disability evaluation on appeal because that issue had not been initially adjudicated. *See Grantham*, 114 F.3d at 1158; *see also Barrera*, 122 F.3d at 1032. And Mr. Urban's request for TDIU was freestanding, meaning that it was not raised in the context of any other pending claim. *See Urban*, 18 Vet.App. at 145-46. Here, however, Mr. Harper's NOD placed the issue of the appropriate disability evaluation into appellate status and, therefore, because he was not awarded the highest rating possible, including TDIU, for the entire appeal period, the issue of entitlement to TDIU for the period prior to February 2016 remained on appeal, and the Board had jurisdiction to consider that matter. The Court will therefore reverse the Board's determination to the contrary and remand the issue of entitlement to TDIU prior to February 2016.

## B. The Board's statement of reasons or bases is inadequate.

With respect to his schedular rating for PTSD, Mr. Harper argues that the Board failed to rectify the reasons-or-bases errors identified in the February 2013 JMPR granted by this Court.

Specifically, he asserts that the Board again failed to discuss evidence of psychosis, including hallucinations, and provide more than a minimal discussion of the occupational impairment he experienced because of his PTSD. Appellant's Br. at 10-11; Appellant's Reply Br. at 5. The Secretary argues that the Board substantially complied with the February 2013 JMPR because it reviewed and discussed the evidence of hallucinations and psychosis and provided an adequate statement of reasons or bases for why a 70% disability rating was not warranted. Secretary's Br. at 14-15. The Secretary, however, does not dispute Mr. Harper's argument that the Board did not sufficiently discuss his occupational impairment. *Id.* at 7-19.

"[A] remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders." *Stegall v. West*, 11 Vet.App. 268, 271 (1998); *see Forcier v. Nicholson*, 19 Vet.App. 414, 425 (2006) (when parties enter into a joint motion for remand, the Secretary and the Board have a duty pursuant to *Stegall* to ensure compliance with the terms of the joint motion). Although the Secretary is required to comply with remand orders, it is substantial compliance, not strict compliance, that is required. *See Dyment v. West*, 13 Vet.App. 141, 146-47 (1999), *aff'd sub nom. Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002); *Evans v. West*, 12 Vet.App. 22, 31 (1998).

Additionally, the Board is required to support its determinations with a written statement of reasons or bases that is understandable by the claimant and facilitates review by this Court. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). The statement of reasons or bases must explain the Board's reasons for discounting favorable evidence, *Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (per curiam order), discuss all issues raised by the claimant or the evidence of record, *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009), and discuss all provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record," *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991).

The Court agrees with Mr. Harper. Although the Board acknowledged in its recitation of the evidence that Mr. Harper experienced hallucinations, *see* Supp. R. at 8, it failed to address this evidence in its analysis, *see* Supp. R. at 10-12. The Board cannot satisfy its duty to provide adequate reasons or bases by merely listing evidence and then reaching a conclusion. *See Dennis v. Nicholson*, 21 Vet.App. 18, 22 (2007) (citing *Abernathy v. Principi*, 3 Vet.App. 461, 465 (1992))

8

("The Court has long held that merely listing evidence before stating a conclusion does not constitute an adequate statement of reasons or bases.").

Similarly, the Board also failed to adequately discuss any occupational impairment that Mr. Harper may experience because of his PTSD. *See* Supp. R. at 822. The Board merely noted that Mr. Harper has a good relationship with his manager, Supp. R. at 11, and that his Global Assessment of Functioning scores did not "signif[y] an inability to work," Supp. R. at 12. The Board's minimal discussion regarding Mr. Harper's occupational impairment overlooks potentially favorable evidence, *see*, *e.g.*, Supp. R. at 989, and frustrates judicial review. *See Thompson*, 14 Vet.App. at 188; *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Given these deficiencies, the Court agrees with the appellant that the Board's decision contains the same reasons-or-bases errors that the parties had identified in the February 2013 JMPR. *See* Appellant's Br. at 10-11. Accordingly, a remand is required. *See Forcier*, 19 Vet.App. at 425; *Stegall*, 11 Vet.App. at 271.

Given the disposition of this matter, the Court will not address Mr. Harper's other arguments. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order) ("[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand."). On remand, Mr. Harper is free to submit additional evidence and argument, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

On consideration of the foregoing, the Court REVERSES the portion of the July 20, 2016, Board decision that found that it lacked jurisdiction over the issue of entitlement to TDIU, SETS ASIDE that portion of the Board's decision that denied an initial disability rating in excess of 50% for PTSD prior to December 17, 2015, and REMANDS the matter for proceedings consistent with this decision. The appeal is DISMISSED as to the issue of entitlement to a disability rating in excess of 70% for PTSD from December 17, 2015.

9