Citation Nr: 1607942 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-05 438 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to a total disability evaluation based on individual unemployability (TDIU) due to service-connected disabilities. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. L. Wolinsky Associate Counsel


INTRODUCTION

The Veteran had active military service from September 2001 to December 2006.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. The issue of entitlement to TDIU was adjudicated and denied by the RO in a Supplemental Statement of the Case issued in September 2013; entitlement to TDIU was denied by the Board in June 2015. 

A Board decision in June 2015 denied the Veteran's claim for TDIU. The Veteran thereafter appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In an Order dated in December 2015, the Court granted a Joint Motion for Partial Remand (JMPR) by the Veteran and VA General Counsel, to vacate the Board's decision and remand the case for readjudication in accordance with the JMPR.

In February 2016, the Veteran submitted a waiver of the Veteran's right to have any additional evidence initially considered by the RO. Accordingly, the Board may consider evidence in the first instance. See 38 C.F.R. § 20.1304 (2015).

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.


FINDING OF FACT

The Veteran's service-connected disabilities are of such severity as to effectively preclude all forms of substantially gainful employment for which the Veteran's education and occupational experience would otherwise qualify her.

CONCLUSION OF LAW

The criteria for TDIU are met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.18, 4.19, 4.25 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. The Board is granting in full the benefit sought on appeal. Any error committed with respect to either the duty to notify or the duty to assist was harmless and will not be further discussed.

Additionally, the Board finds that there has been substantial compliance with the JMPR to reconsider favorable evidence. See Dyment v. West, 13 Vet. App. 141 (1999); see also Forcier v. Nicholson, 19 Vet. App. 414, 425 (2006) (holding that the duty to ensure compliance with the Court's order extends to the terms of the agreement struck by the parties that forms the basis of the joint motion to remand).

A total disability rating for compensation purposes may be assigned when the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a service-connected disability. 38 C.F.R. § 4.16(a); see also 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341 (2015).

Marginal employment shall not be considered substantially gainful employment. For purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce as to the poverty threshold for one person. Consideration shall be given in all claims to the nature of the employment and the reasons for termination. 38 C.F.R. § 4.16(a).

If there is only one service-connected disability, it must be rated at 60 percent or more; if there are two or more service- connected disabilities, at least one must be rated at 40 percent or more and the combined rating must be at least 70 percent. 38 C.F.R. § 4.16(a). In the case at hand, the Veteran is service connected for: (1) posttraumatic stress disorder (PTSD) and major depressive disorder at 30 percent, (2) right upper extremity radiculopathy associated with cervical spine strain at 20 percent, (3) left upper extremity radiculopathy associated with cervical spine strain at 20 percent, (4) cervical spine strain at 10 percent, (5) left ankle tendonitis at 10 percent, (6) thoracolumbar minor scoliosis at 10 percent, (7) right lower extremity radiculopathy associated with thoracolumbar minor scoliosis at 10 percent, (8) left lower extremity radiculopathy associated with thoracolumbar minor scoliosis at 10 percent, (9) scar to her right breast at 10 percent, and (10) trigeminal nerve paresthesia rated as noncompensable. 

The Veteran's cervical spine strain is rated at 10 percent disabling, and the Veteran's left and right upper extremity radiculopathy associated with the Veteran's cervical strain are rated at 20 percent respectively. The Veteran's cervical spine, and left and right upper extremity radiculopathy result from a common etiology and combine to a disability of 40 percent; the Veteran's combined disability rating is 80 percent. As such, the Veteran meets the minimum percentage requirement as set forth in 38 C.F.R. § 4.16(a)(2). The determinative issue is whether the Veteran is unemployable due to her service-connected disabilities. 

In determining whether the Veteran is entitled to a TDIU rating, consideration may be given to her level of education, special training and previous work experience, but neither her advancing age nor impairment from her nonservice-connection disabilities may be considered. 38 C.F.R. §§ 3.341, 4.16, 4.19. In other words, according to pertinent regulation, "unemployability, in service-connected claims, associated with advancing age or intermittent disability, may not be used as basis for a total disability rating." 38 C.F.R. § 4.19.

The Veteran's claim for TDIU was initiated by the Board in a February 2012 remand. Pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009), the Board determined that the Veteran's contention at her July 2010 VA examination that she was unable to find a job due to her disabilities raised the issue of TDIU.

Lay statements submitted by the Veteran's fiancé in September 2008 indicate that the Veteran was working both as an electrician, and a waitress. The Veteran's fiancé stated that when the Veteran's medication wears off her back pain becomes debilitating. 

A March 2009 psychological consultation shows that the Veteran had limited ability to demonstrate behavioral stability in a high stress environment for extended periods of time. The medical staff also noted that the Veteran's current symptoms of PTSD would be a liability if she returned to duty. The Veteran was deemed unable to perform on a fulltime basis in a deployed basis, but could perform part-time. The medical staff also stated that the Veteran's behavioral stability was compromised. The Veteran was assessed with a GAF of 55.

A March 2009 VAMC note shows that the Veteran complained of chronic upper back pain. The Veteran reported her pain as a six out of ten at the examination, and stated that her average pain was between a six and eight out of ten when working. 

In a statement received in April 2009, the Veteran stated that her work is very labor intensive and her lack of sleep and depression causes a strain on her job. In June 2009 the Veteran stated that she suffered from panic attacks and anger outbursts, and requested medication for her PTSD and depression. 

A July 2009 VAMC mental health note indicates that the Veteran worked six days a week for ten hours a day. The Veteran reported pain to her back which required her to do light duty. The Veteran stated that she found her job working at the shipyard exhausting, and she stated she struggles with anger management. Medical staff also noted that the Veteran had chronic sleep problems, which included nightmares, and flashbacks. The Veteran also complained of increasing fatigue. The Veteran noted two previous suicide attempts in 2002 and 2005. 

In October 2009 the Veteran underwent an examination for her PTSD and for traumatic brain injury (TBI). The Veteran stated that she still had problems sleeping, and reported a decrement concerning concentration, focus, decisiveness, memory function, and overall mental acuity. The examiner noted that the Veteran had received her GED, and that after her discharge from the Army she worked as an electrician at a local shipyard from November 2006 until she was laid off in July 2009. At the time of the examination the Veteran was attending real estate school. The Veteran was deemed mentally capable of managing her benefit payments, and deemed able to perform all activities of daily living. The examiner concluded that the Veteran was capable of working on a full time basis from a mental health point of view, but that the Veteran has difficulty sustaining interaction with other people without becoming irritable and angry. The Veteran was also deemed to have difficulty tolerating frustration. The Veteran was assessed with a GAF of 55. The Veteran stated that she suffers from upper back pain, bilateral plantar fasciitis, scoliosis and nerve pain in her back. 

In November 2009 the Veteran had a VAMC consultation. The Veteran complained of bilateral foot pain, with pain upon standing/weight bearing in the morning. The Veteran stated that she used over the counter orthotics for cushioning. The Veteran also complained of left arm mild dysesthesias and neck pain. The Veteran requested a back brace which was ordered for her. 

In July 2010 the Veteran underwent an examination for her left ankle tendinitis, and her cervical spine strain. The Veteran stated that she experiences left ankle stiffness, swelling, pain, giving way, and lack of endurance. The Veteran stated that she experiences left ankle flare-ups twice a day which last thirty minutes, and flares her pain to an eight out of ten. The Veteran stated that she experiences stiffness, and pain when walking. The examiner noted that the functional impact to the Veteran was that she found it hard to walk after inactivity or until the medication started working. The Veteran reported cervical spine stiffness, fatigue, spasms, decreased motion, and paresthesias. The Veteran reported pain in her lower neck, and upper back that radiates down her left arm. The Veteran reported her flare-ups occur once a day for about six hours in length. The examiner stated that the Veteran's flare-up is severe, brought on by physical activity, stress, or sitting or standing too long. The Veteran stated that her pain is relieved with rest or by medication. The Veteran stated that she was unable to find a job due to her disabilities. 

In October 2011 the Veteran was seen at the VAMC. The Veteran reported left upper back pain which she reported as an eight out of ten and described as a "stabbing/burning pain". The Veteran reported that her pain was aggravated by being on her feet for many hours. The Veteran also reported having left heel pain in the morning when waking up. 

In July 2013 the Veteran underwent a scars Disability Benefits Questionnaire. With regard to the functional impact of her left breast scarring residuals, the examiner stated that the Veteran's scars had no functional impact to her ability to work. A July 2013 ankle DBQ determined that the Veteran's ankle condition did not impact her functional ability to work. The examiner did however note, pain, weakness, fatigability and/or incoordination with additional limitation of functional ability of the ankle joint during flare-ups or repeated use over time. A July 2013 cervical spine conditions DBQ determined that the Veteran's neck disability did impact her ability to work. The examiner specifically noted that the Veteran had difficulty lifting and carrying heavy items. A July 2013 thoracolumbar spine conditions DBQ determined that the Veteran's thoracolumbar spine impacted her ability to work. The examiner specifically noted that the Veteran's condition made standing for long periods of time difficult. 
 
The Veteran's medical records from her psychological hospitalization in May and June 2014 are associated with the record. The records show that the Veteran spent six days hospitalized for her psychological symptoms. The Veteran reported having suicidal ideation and that she had thoughts of using knives to cut herself. Due to the Veteran's behavior, her parents called emergency services. At the time of discharge the Veteran reported that she did not have suicidal ideation, but that she did have suicidal thoughts. The medical notes show that the Veteran had not worked since 2013. At the time of the Veteran's admission, she had a GAF of 20, the Veteran was discharged with a GAF of 45. 

The Board also notes the specific findings made by the JMPR in that the Veteran: had suicidal ideation with a plan to poison herself with carbon monoxide in her car, admitted to hearing voices and seeing visions of people sneaking around her, her June 2012 statements that she constantly experiences panic attacks at work and that she "cannot be drugged up in a work environment", her contention that she missed over one hundred hours of work as an administrative assistant in a five month period, and the July 2010 complaints of cervical pain and flare-ups. 

VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner's opinion. Geib v. Shinseki, 733 F.3d 1350, at 1354; 38 C.F.R. § 4.16(a). The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007). Thus, based on the evidence of record the Board finds that the Veteran is entitled to a TDIU rating. 

The Veteran is not presently employed and based on the Veteran's November 2014 application for TDIU, has not been employed since August 2014. Based on the Veteran's education and employment history, the Veteran seems to be qualified to work as an electrician, administrative assistant, or waitress. Lay statements from the Veteran, and her fiancé indicate that when the Veteran's medication wears off her back pain becomes debilitating. The Veteran has also contended that when she is active at work, her back pain flares-up to an increased severity. The Veteran's back pain was so intense that the Veteran used a back brace to help remedy her symptoms. The Board also notes that the Veteran's cervical spine strain results in upper extremity pain and radiculopathy. The Veteran also experiences flare-ups of pain to her ankle. The July 2010 VA examination also objectively determined that the Veteran's cervical spine flare-ups can last up to six hours, and can be brought on by physical activity, stress, or sitting or standing too long. The July 2013 VA examiner specifically noted that the Veteran's cervical spine disability would make carrying heavy items difficult, and that her thoracolumbar spine disability made standing for long periods of time difficult. Thus, it is clear from the objective medical evidence and lay statements, that the Veteran's service-connected musculoskeletal disabilities severely impair her ability to obtain and maintain employment which requires physical activity, or even prolonged sitting. 

The Veteran's PTSD and depression interferes with her occupational ability as well. The March 2009 consultation shows that the Veteran would be unable to handle the demands of full-time deployment, that her behavioral stability was compromised, and that she had a difficult time adapting to stress. The record also shows the Veteran suffers from panic attacks, major sleep impairment, and that the Veteran has difficulty sustaining interaction with other people without becoming irritable and angry. The Veteran has also shown suicidal ideation, has announced suicide plans, and has even attempted suicide resulting in hospitalization. Thus, it is clear that the Veteran's service-connected psychological disability severely impacts her ability to work with customers and the public, and at times has rendered her unable to work completely. 

The combined impact of her service-connected physical and psychiatric disabilities preclude gainful employment. Therefore, entitlement to a TDIU must be granted.
 

ORDER

Entitlement to a total rating based upon individual unemployability (TDIU) based upon service-connected disabilities is granted.



____________________________________________
DEBORAH W. SINGLETON
 Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs