http://www.va.gov/vetapp16/Files3/1621771.txt

Citation Nr: 1621771 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 09-03 223 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Winston-Salem, North Carolina

THE ISSUE

Entitlement to service connection for fibromyalgia.

REPRESENTATION

Appellant represented by: National Association for Black Veterans, Inc.

ATTORNEY FOR THE BOARD

E. Blowers, Associate Counsel

INTRODUCTION

The Veteran, who is the appellant, had active service from November 1992 to November 1997.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a July 2006 rating decision of the RO in Winston-Salem, North Carolina. Subsequently during the appeal, and an October 2007 rating decision of the RO in Huntington, West Virginia, also denied service connection for fibromyalgia. The matter was first before the Board in March 2012, where the Board remanded the issue on appeal to obtain outstanding relevant documents and to schedule a VA fibromyalgia examination. After the aforementioned development was completed, the case was returned to the Board. In a March 2014 decision, the Board denied service connection for fibromyalgia. 

The Veteran appealed the March 2014 Board decision to the U.S. Court of Appeals for Veterans Claims (Court). In a May 2015 memorandum decision, the Court vacated and remanded the Board's denial of service connection for fibromyalgia. Specifically, the Court held that the Board erred in relying on an inadequate March 2012 VA medical opinion, as the VA examiner failed to address the Veteran's in-service symptoms and did not adequately discuss the rationale for the opinion.

Subsequently, in an October 2015 Remand, the Board remanded the issue on appeal to obtain an adequate VA fibromyalgia examination and opinion. The record reflects that the Veteran received an adequate VA examination and opinion in December 2015. As the Board remanded the issue on appeal to obtain an adequate VA examination and opinion, and as the instant decision specifically addresses the question of whether the Veteran's relevant in-service symptoms are related to the currently diagnosed fibromyalgia, the Board has met its responsibility to fully comply with the Court's order. See Forcier v. Nicholson, 19 Vet. App. 414 (2006) (holding that the duty to ensure compliance with a Court Order extends to the terms of the agreement struck by the parties that forms the basis of the JMR).

Further, a remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998). Per the October 2015 Board remand directives, as the December 2012 VA fibromyalgia examination and opinion adequately addresses the issues raised by the May 2015 memorandum decision, the Board finds that Stegall is satisfied in the instant decision.

VA has received additional medical documentation since the issuance of the last supplemental statement of the case (SSOC). While this evidence does make reference to the Veteran's fibromyalgia, the information contained is merely cumulative and/or redundant of the evidence previously received and considered by the RO. A waiver of RO consideration is not necessary. See 38 C.F.R. 
§ 20.1304(c) (2015). The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence.

FINDINGS OF FACT

1. The Veteran is currently diagnosed with fibromyalgia.

2. During service the Veteran was treated for symptoms commonly associated with fibromyalgia.

3. The currently diagnosed fibromyalgia is neither related to the relevant symptoms treated in service, nor is it related to any other in-service injury, event, or disease.

CONCLUSION OF LAW

The criteria for service connection for fibromyalgia have not been met. 
38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.326(a) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and to Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The Court issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

In August 2005, VA issued the Veteran VCAA notice which informed of the evidence generally needed to support a claim for service connection, what actions needed to be undertaken, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the July 2006 rating decision from which this appeal arises. Further, the issue was readjudicated in an August 2008 Statement of the Case (SOC), and October 2012 and December 2015 SSOCs; therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, the Board acknowledges that inadequate VA fibromyalgia examinations were conducted in May 2006 and March 2012; however, per the October 2015 Remand, an adequate VA fibromyalgia examination and opinion was obtained in December 2015. The examination and opinion reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The examination and opinion reports reflect that the VA examiner reviewed the record, conducted necessary testing, and answered all relevant questions. Further, in rendering the opinion the VA examiner explicitly considered the Veteran's in-service symptoms that mirrored symptoms often associated with fibromyalgia.

All relevant documentation, including Social Security Administration (SSA) records and VA and private treatment (medical) records, has been secured or attempted to be secured, and all relevant facts have been developed. There remains no question as to the substantial completeness of the record as to the issue of service connection for fibromyalgia. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R 
§§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.

Service Connection for Fibromyalgia

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996).

Fibromyalgia is not a chronic disease under 38 C.F.R. § 3.309(a). As such, the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service are not applicable. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Under 38 U.S.C.A. § 1117(a)(1) (West 2014), compensation is warranted for a Persian Gulf veteran who exhibits objective indications of a "qualifying chronic disability" that became manifest during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent during the presumptive period prescribed by the VA Secretary. The definition of "qualifying chronic disability" was expanded to include (a) an undiagnosed illness, (b) a medically-unexplained chronic multi-symptom illness (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (c) any diagnosed illness that the Secretary determines, in regulations, warrants a presumption of service connection. 38 C.F.R. § 3.317(a)(2) (2015). During service the Veteran did not serve in the Southwest Asia theater of operations during the Persian Gulf War; therefore, the presumptive provisions pertaining to undiagnosed illness do not apply to the instant matter.

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1154(a) (West 2014); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

The Veteran has advanced that fibromyalgia is related to various symptoms treated during service, including pain when moving fingers, stiffness, fatigue, sleep disturbance, headaches, and anxiety. Initially, the Board finds that the Veteran is currently diagnosed with fibromyalgia. Such diagnosis can be found within the multiple VA fibromyalgia examinations and in various VA and private treatment records.

Next, the Board finds that during service the Veteran was treated for symptoms commonly associated with fibromyalgia. Per the Court's May 2015 memorandum decision, service treatment records reflect that in May 1993 the Veteran was treated for a swollen right hand and complained that finger movement was painful. The Veteran was diagnosed with swelling and pain in the right hand and wrist with unknown etiology. In October 1994, the Veteran complained of fatigue and sleep issues. The Veteran was treated by an emergency room in August 1995 for left ankle pain. An X-ray demonstrated no acute osseous or articular abnormality. A service treatment record from April 1997 conveys that the Veteran complained of nausea, headaches and fatigue. Subsequently, in September 1997, the Veteran was diagnosed with stress and anxiety.

Finally, after a review of all the evidence of record, lay and medical, the Board finds that the evidence weighs against a finding that the currently diagnosed fibromyalgia is related to any of the symptoms treated in service and/or is related to any other in-service injury, event, or disease. While the symptoms treated during service will be addressed below, the Board notes that service treatment records reflect that during service the Veteran was not diagnosed with fibromyalgia, nor was it advanced as a possible cause of any of the aforementioned symptoms. Further, the service treatment records do not report any injury, event, or disease (other than the aforementioned symptoms) that may be related to the subsequently diagnosed fibromyalgia, the Veteran has not advanced any such injury, event, or disease (other than the aforementioned symptoms), and the VA, private, and SSA records do not convey any such in-service injuries, events, or diseases.

In April 1998, the Veteran sought service connection for a right hand condition that the Veteran advanced began in 1992. Subsequently, the Veteran received a VA general medical examination in October 1998. At the conclusion of the examination, as relevant to the issue on appeal, the VA examiner diagnosed "trace swelling of the ankles" and found the Veteran's hands to be normal, with "no definite swelling of hands noted." No diagnosis or suggestion of fibromyalgia was rendered.

Multiple records reflect that the Veteran was diagnosed with fibromyalgia in the year 2000. The Veteran received a private examination for musculoskeletal pain in January 2000. It was noted that the private examiner did not have any outside records or recent laboratory results at that time, and impressions were "very preliminary." The record reflects that the Veteran advanced having a several year history of joint pain and swelling that began during service. The Veteran advanced having previously been seen by in-service physicians and post-service VA physicians with no clear diagnosis established. The Veteran reported that symptoms had been mostly intermittent, other than persistent stiffness in the fingers. The private examiner noted the Veteran's prior medical history of anemia and recurrent sinus problems. The physician opined that the examination was suggestive of myofascial pain syndrome/fibromyalgia. No opinion was rendered as to whether said fibromyalgia was related to the in-service symptoms advanced by the Veteran.

An August 2000 VA treatment record reflects that the Veteran was diagnosed with three separate disabilities of fibromyalgia, "right arm swelling, feeling of coldness," and depression. Per a September 2000 VA treatment record, the Veteran was diagnosed with "fibromyalgia with poor understanding of the problem." The VA physician also noted that the Veteran had both work and family stressors. Further, a subsequent October 2006 VA treatment record noted that the Veteran had "pre-fibromyalgia symptoms of depression," and opined that the Veteran had symptoms that could represent a primary depressive disorder. In an October 2004 SSA report, the Veteran advanced that symptoms of fibromyalgia first became a concern in 2000, which is almost three years after service separation. 

In multiple August 2007 statements, the Veteran's sister, brother, and aunt all advanced that the Veteran had been healthy prior to service. They wrote that, upon separating from service, the Veteran demonstrated numerous negative health symptoms including headaches, pain and swelling in the hands and feet, stomach pain, and dizziness. 

A November 2007 private medical record reflects that the Veteran went to see a private physician so the physician "could address whether [the Veteran]'s fibromyalgia is a condition that had been present during the time of military service." The private physician stated that the Veteran brought in multiple records for review. Initially, the Board notes that the private physician did not actually render an opinion as whether the currently diagnosed fibromyalgia was related to service. In fact, under "impression/plan," the private examiner stated that, "according to the patient, this condition started while on active duty military, see the above references to active duty medical record."

In the November 2007 report, the private physician merely noted that, per the records, "there definitely was a date in October of 1994 when [the Veteran] was seen at Wright-Patterson Air Force Base and was noted to have sleeping problems with fatigue." The private examiner did not link the sleeping problems and fatigue to fibromyalgia. Again, there is no question that the Veteran had symptoms similar to those associated with fibromyalgia during service. Rather, the question is whether such symptoms were, in fact, symptoms of the currently diagnosed fibromyalgia.

Further, the private physician in November 2007 explained that "there is also a note stating that in May 2000, [the Veteran] was noted to have a several-year history of fibromyalgia." While it is unclear exactly which "note" the private examiner was referring to, the vast weight of the evidence, including VA, private, and SSA documentation and the Veteran's own statements, reflect that the Veteran was first diagnosed with fibromyalgia on or about January 2000. Rather, considering all the other evidence of record, it is likely that the document referred to by the private physician noted a several-year history of symptoms similar to those of fibromyalgia. Again, the question before the Board at this time is not whether such symptoms existed during service, but whether such symptoms were, in fact, symptoms of the currently diagnosed fibromyalgia.

Per the report from a May 2006 VA fibromyalgia examination, the Veteran advanced that symptoms of fibromyalgia began during service; however, fibromyalgia was not diagnosed until approximately the year 2000. A similar history was noted in the March 2012 VA fibromyalgia examination. The report from the recent December 2015 VA fibromyalgia examination also conveys that the Veteran advanced having symptoms of fibromyalgia in service, and that fibromyalgia was diagnosed several years after discharge by three different specialists. 

After reviewing the Veteran's symptoms and conducting the appropriate testing, the VA examiner in December 2015 opined that it was less likely than not that the currently diagnosed fibromyalgia was related to the advanced in-service symptoms, and/or that the disability was incurred in or caused by an in-service injury, event, or disease. The VA examiner's reasoning was that the in-service symptoms were specifically attributable to other in-service causes that were not fibromyalgia.

The VA examiner in December 2015 noted that service treatment records indicated the Veteran was seen and treated on several occasions for right hand pain and swelling as early as May 28, 1993. The Veteran was diagnosed with tenosynovitis, treated conservatively, and sent home. Next, there was one occurrence when the Veteran was seen on sick call for complaints of the hands being red and swollen. The Veteran was diagnosed with mild cold exposure and treated conservatively with instructions to follow up if there was no improvement.

The Veteran was seen for headaches on June 10, 1994, August 9, 1994, and September 20, 1995. The Veteran was diagnosed with probable migraine headache due to stress or sinusitis. Fatigue had also been diagnosed on several occasions throughout service, but this was associated with iron deficiency anemia due to menorrhagia. Additionally, the sleep disturbance in service appeared to be stress related. The in-service depressive symptoms also appeared to be due to a separate mental health disability.

After reviewing the above in-service symptoms and corresponding diagnoses, the VA examiner in December 2015 went on to consider whether the Veteran's other instances of in-service pain may have been due to fibromyalgia before concluding that the symptoms in service did not meet the fibromyalgia criteria. The VA examiner explained that the criteria for the diagnosis of fibromyalgia required a history of widespread pain that was present for at least three months. The pain is considered widespread when all of the following are present: 1) pain in both sides of the body; 2) pain above and below the waste; 3) axial skeletal pain (cervical spine, anterior chest, thoracic spine, or low back pain); and 4) pain, on digital palpation, present in at least 11 of 18 tender point sites (all of which were listed in the examination report). 

From there, the VA examiner opined that the Veteran did not meet the above fibromyalgia criteria during service. The Veteran's complaints of pain and swelling were usually unilateral on the right side, and the service treatment records did not indicate complaints of widespread pain. For these reasons, the VA examiner opined that it was less likely than not that the currently diagnosed fibromyalgia was incurred in active service.

Concerning the December 2015 VA fibromyalgia opinion must be addressed by the Board, in the opinion the VA examiner noted that "there is mention of diagnoses of fibromyalgia by other specialist but medical evidence from these providers is not available in VBMS or Virtual VA." There is no indication that the VA examiner's opinion would have been any different had any such additional records been available, as the opinion was based upon the Veteran's lack of widespread pain during service and the fact the other symptoms were attributable to different disabilities. Other post-service diagnoses of fibromyalgia would have no tendency to prove that fibromyalgia began during service because the fact of post-service diagnosis of fibromyalgia is already established, so such evidence could not further substantiate the claim for service connection, but could only show what is already established (current diagnosis). 

The Board notes that in the examination report the VA examiner incorrectly stated that the Veteran was diagnosed in 2005. As discussed above, the Veteran was, in fact, diagnosed in approximately January 2000; however, the Board finds that this incorrectly listed date does not affect the basis of the opinion or render it inadequate. 

This is not a matter in which the Board is considering whether the Veteran had continuous symptoms of a disability since service separation. Rather, the main question before the Board and the VA examiner in December 2015 is whether the relevant symptoms noted in service were related to the now diagnosed fibromyalgia. In answering this question, the VA examiner in December 2015 took an accurate in-service history from the Veteran. See Kowalski v. Nicholson, 19 Vet. App. 171, 179 (2005) (holding that VA cannot reject a medical opinion simply because it is based on a history supplied by a veteran, but the strength of the opinion depends rather upon the accuracy of the facts asserted by the veteran); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (stating that review of the claims file is not a talisman). Then, the VA examiner in December 2015 1) considered whether any of the symptoms were attributable to different diagnoses, and 2) considered whether the Veteran had widespread pain. After answering the first question in the affirmative and the second in the negative, the VA examiner opined that it was less likely than not that the Veteran's in-service symptoms were related to the currently diagnosed fibromyalgia. This analysis or rationale would be the same whether or not the Veteran was diagnosed in 2001 or 2005. For these reasons, the Board finds the December 2015 VA examination to not only be adequate, but to be of significant probative value.

Having reviewed all the evidence of record, the Board notes that it has not received any VA, private, and/or SSA treatment (medical) records or separate opinions indicating that any VA or private physician has opined that the currently diagnosed fibromyalgia is related to the in-service symptoms and/or is in any other way related to service. 

Further, although the Veteran, and to a lesser extent the Veteran's sister, brother, and aunt, have asserted that the currently diagnosed fibromyalgia is related to service, they are lay persons and, under the facts of this particular case that include other noted etiologies for in-service symptoms and no continuous symptoms of fibromyalgia after service until post-service onset in 2001, do not have the requisite medical training or credentials to be able to render a competent medical opinion regarding the cause of the fibromyalgia. The etiology of the Veteran's fibromyalgia is a complex medical etiological question dealing with the origin and progression of the central nervous and other systems. Such a disability is diagnosed primarily on clinical findings and physiological testing. Thus, while the Veteran is competent to report some fibromyalgia symptoms experienced at any time, and while the Veteran's sister, brother, and aunt are able to report observed symptoms demonstrated by the Veteran, under the facts of this case, they are not competent to opine on whether there is a link between current fibromyalgia and the symptoms demonstrated in service. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (recognizing that lay competency is determined on a case by case basis); Jandreau, 492 F.3d at 1377 n.4 (lay persons are not competent to diagnose cancer); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis).

After a review of all the evidence of record, lay and medical, the Board finds that the evidence weighs against a finding that the currently diagnosed fibromyalgia is related to service. The record reflects that no VA or private physician has related the currently diagnosed fibromyalgia to service, including to the documented in-service symptoms commonly associated with fibromyalgia. In December 2015, a VA examiner went into a detailed discussion of how the in-service symptoms were either due to different disabilities and/or did not constitute widespread pain as is required for a fibromyalgia diagnosis. This opinion is supported by the other evidence of record, including the fact that the Veteran was not diagnosed with fibromyalgia until a few years after service. 

For these reasons, the preponderance of the evidence is against a finding that the currently diagnosed fibromyalgia is related to service, to include any of the relevant symptoms treated in service and/or any other in-service injury, event, or disease. As the preponderance of the evidence is against service connection, benefit of the doubt doctrine does not apply, and the claim must be denied. 38 U.S.C.A. 
§ 5107(b); 38 C.F.R. § 3.102. 

ORDER

Service connection for fibromyalgia is denied.

____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs